# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHARLES H. TOMPKINS III**, <br><br> Plaintiff, <br><br> v. <br><br> **LIDA STIFEL**, <br><br> Defendant. | Case No. 18-cv-1212 (CRC) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles Tompkins paid a law firm to represent him and nine of his cousins, including defendant Lida Stifel, in protracted and ultimately unsuccessful litigation over a contested family trust. But court orders don't end all family disputes. After the trust case was dismissed in February 2018, Tompkins filed this one, accusing Stifel of reneging on her share of the litigation expenses and demanding contribution for the unpaid amounts. Stifel now moves to dismiss Tompkins's complaint on the ground that the amount in controversy in the case falls below the $75,000 threshold for federal diversity jurisdiction. For the reasons explained below, the Court will deny the motion.

**I. Background**

As required on a motion to dismiss, the Court draws this factual background from the complaint, "assum[ing] the truth of all well-pleaded factual allegations." Sissel v. U.S. Dep't of Health & Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014).

Tompkins and Stifel, along with eight of their cousins, were co-plaintiffs in a lengthy legal battle against a family trust in the District of Columbia Superior Court. Compl. ¶¶ 5, 9, 21. The cousins retained the law firm Katten Munchin Rosenmann LLP ("Katten") at the start of the

litigation in 2011.  Id. ¶¶ 4–5.  They agreed to be jointly and severally liable for the firm's fees and to timely pay all bills, which were typically delivered every month.  Id. ¶¶ 13–14; see also Compl., Ex 1. at 2 (Katten representation agreement).  As an accommodation to the law firm, the cousins agreed that Tompkins would pay Katten's bills directly and that they would reimburse him proportionately at a later, unspecified time.  Compl. ¶ 15.  Separately, Tompkins and Stifel at some point discussed his paying her share of the trust-litigation expenses.  Compl., Ex. 3 at 35–36 (demand letter).  Tompkins claims that this side agreement, which is alluded to in an attachment to the complaint but not in the complaint itself, was expressly conditioned on Stifel not disclosing it to the other cousins.  Id.  But Stifel did reveal the private arrangement, Tompkins alleges, hindering his efforts to collect from the others.  Id.

As the trust litigation was winding down, Tompkins began the process of settling up with his cousins.  Id.  As part of that process, in December 2017, Tompkins's counsel sent a demand letter notifying Stifel that "the time has come to pay your share of the outstanding legal fees [Tompkins] has advanced on your behalf."  Id. at 35; Compl. ¶¶ 18–19.  She refused.  Compl. ¶ 20; Compl., Ex. 4 at 37 (Stifel e-mail response).  A few months later in February 2018, the Superior Court dismissed the cousins' claims against the trust.  Compl. ¶ 21.  Tompkins then brought this diversity action against Stifel.  He asserts a single count of contribution and requests that Stifel be ordered to pay her share of Katten's legal bills.  Altogether, Tompkins seeks $294,996 in litigation expenses and around $55,000 in interest.  Id. at 6.

Stifel has moved to dismiss Tompkins's contribution claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  She argues that Katten's billing records (which she attaches to her motion) show that the majority of Tompkins's payments to the firm fall outside the three-year District of Columbia statute of limitations for contribution

actions. With these fees being unrecoverable, Stifel argues, the Court must dismiss the complaint because the remaining amount in controversy is less than the $75,000 jurisdictional threshold under 28 U.S.C. § 1332.

## II. Standard of Review

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). When analyzing a motion to dismiss under that rule, the Court "assume[s] the truth of all material factual allegations in the complaint, and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). The Court may consider materials outside the pleadings to assure itself of jurisdiction. Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); Shekoyan v. Sibley Int'l Corp., 217 F. Supp. 2d 59, 63 (D.D.C. 2002). The Court has diversity jurisdiction over disputes between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The Court determines whether a complaint states a sufficient amount in controversy at the time it is filed; subsequent events typically do not deprive the Court of jurisdiction. Cuneo Law Grp., P.C. v. Joseph, 920 F. Supp. 2d 145, 150 (D.D.C. 2013) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289–90 (1938)). In addition, the Court may dismiss a case for lack of jurisdiction based on an insufficient amount in controversy only if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." Bronner v. Duggan, 249 F. Supp. 3d 27, 37 (D.D.C. 2017) (quoting St.

Paul Mercury Indem. Co., 303 U.S. at 289). In short, "the Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." Rosenboro v. Kim, 994 F.2d 13, 17 (D.C. Cir. 1993).

III. **Analysis**

Ms. Stifel's motion presents one pure question of law and one disputed question of fact. The legal question is whether a court may consider an affirmative defense—here, the running of a statute of limitations—in assessing whether a plaintiff has satisfied the amount in controversy threshold for diversity jurisdiction at the outset of a case. Although neither party mentions it, the Circuits are divided on this question. Most have answered in the negative, reasoning that affirmative defenses should be ignored because they can be waived. See, e.g., Perez v. Alta-Dena Certified Dairy, LLC, 647 F. App'x 682, 684 (9th Cir. 2016) ("[E]ven if the applicable statute of limitations ultimately precludes recovery for violations before May 2009 . . . that potential defense does not reduce the amount in controversy for purposes of establishing federal jurisdiction."); McGee v. Sentinel Offender Servs., LLC, 719 F.3d 1236, 1241 (11th Cir. 2013) ("When determining the amount in controversy, we do not consider whether some damages claimed by the plaintiff might be precluded by a statute of limitations."); see also Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397–98 (2d Cir. 2003); Kovacs v. Chesley, 406 F.3d 393, 396 (6th Cir. 2005); Johns–Manville Sales Corp. v. Mitchell Enters., Inc., 417 F.2d 129, 131 (5th Cir. 1969).

At least one Court of Appeals and a handful of district courts have concluded otherwise. See Lamb v. Amalgamated Labor Life Ins. Co., 602 F.2d 155, 159 (8th Cir. 1979) (dismissing case for lack of diversity jurisdiction because tort claims were barred by the statute of

4

limitations); Richardson v. Servicemaster Glob. Holdings Inc., No. C 09-4044 SI, 2009 WL 4981149, at *2 (N.D. Cal. Dec. 15, 2009) (dismissing wage and hour case because only 3.5 months of plaintiff's employment fell within statute of limitations and thus amount in controversy fell below the jurisdictional requirement); Johnson v. Beneficial Loan Soc., 34 F. Supp. 392, 395 (D. Del. 1940) (finding that plaintiffs' complaint did not meet the jurisdictional amount because unpaid profits claims were outside the statute of limitations). A fellow court in this district has, in dicta, endorsed the minority view. See Gharib v. Wolf, 518 F. Supp. 2d 50, 55 nn.2–3 (D.D.C. 2007). But the D.C. Circuit has not spoken, so there is no controlling authority for this Court to follow.

The contested factual question raised by Stifel's motion is when did her alleged contribution obligations arise. She contends they arose each time Tompkins paid Katten's monthly bills. MTD at 3–4. And because he made most of those payments more than three years before he filed this suit, only $1,519.95 of her allegedly unpaid fees fall within the statute of limitations. Id. at 4. Therefore, she argues, the complaint does not meet the $75,000 diversity threshold. Id.

But Tompkins tells a different story. He claims he advanced the payment of Katten's monthly fees throughout the trust litigation on the promise that his cousins would pay him back in the end. Opp'n at 5–10; Compl., Ex. 3 at 35. Additionally, his demand letter to Stifel suggests that they agreed he would pay Stifel's share of the legal bills so long as she did not disclose the arrangement to their other cousins. Compl., Ex. 3 at 35–36. But disclose she did, Tompkins says. Id. In his view, then, his contribution claim did not accrue until the trust litigation concluded, or until Stifel broke her end of their side agreement, both of which happened within three years of this suit. Who is correct cannot be determined based on the

present record, which consists of the complaint, its attachments, and—if the Court were to consider them as Stifel asks, see MTD at 3—the Katten billing records. The complaint materials are consistent with Tompkins's account. And the billing records do not move the needle because while they confirm the amounts the firm billed and the cousins were obligated to pay, they say nothing about whatever understanding Tompkins and his cousins had regarding the timing of their reimbursements. They are equally irrelevant to Tompkins and Stifel's separate arrangement. These understandings can only be divined through discovery.[1]

The foregoing factual dispute over when Tompkins's contribution claim accrued would persist no matter how the Court might resolve the open legal question of whether affirmative defenses can be considered in assessing diversity jurisdiction. In other words, even if the Court were to adopt the minority view and consider Stifel's statute of limitations defense, she would still have to establish the defense before the Court could dismiss the case for lack of diversity jurisdiction. And the outstanding factual dispute prevents her from doing so at this stage of the case. The Court therefore sees no reason to decide the legal question, especially in the absence of controlling authority, before it becomes necessary to do so.

Accordingly, the Court cannot find on the present record that the amount in controversy is, to a legal certainty, less than $75,000. It must therefore deny Stifel's motion to dismiss.

---

[1] Sometimes a court will order limited jurisdictional discovery before ruling on a motion to dismiss under Rule 12(b)(1). See Williams v. Romarm, SA, 756 F.3d 777, 786 (D.C. Cir. 2014) (explaining that court may order jurisdictional discovery where plaintiff has "good faith belief that such discovery" will develop facts to support jurisdiction). The Court declines to do so here for two reasons. First, the parties have not asked for it. And second, the discovery needed to resolve Stifel's 12(b)(1) motion goes to the nature of the agreements between Tompkins and his cousins, and Tompkins and Stifel—the very heart of Tompkins' contribution claim.

Stifel is free, of course, to pursue the merits of her statute of limitations defense, an issue on which the Court takes no position.[2]

IV. **Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that [4] Defendant's Motion to dismiss is DENIED.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date: February 14, 2019

---

[2] The Court notes, however, that when a statute of limitation accrues for a contribution claim based upon a series of payments is not a settled question. Under D.C. law, a claim for contribution based upon a single payment, such as a tort judgment, accrues when the payment is made. Bair v. Bryant, 96 A.2d 508, 510 (D.C. 1953). But the parties have not provided on-point case law regarding when a claim for contribution based upon multiple payments made over a period of time would accrue. One parallel could be contribution claims for a series of loan payments, but courts appear divided on when such a claim accrues. Compare, e.g., Willis v. Willis, 1980 U.S. Dist. LEXIS 12487, at *51–53 (D.D.C. Jul. 23, 1980), aff'd on other grounds by 655 F.2d 1333 (D.C. Cir. 1981) (concluding that party "first possessed a claim for contribution with respect to obligations incurred on [loan] note" when "the note had been honored in full"), with, e.g., Carter v. Lechty, 72 F.2d 320, 322 (8th Cir. 1934) (reasoning that the right of contribution is based on an implied agreement between parties to pay their shares of all obligations as they come due). Moreover, there may be meaningful differences between a typical loan and the fee obligations at issue here, which did not have a fixed end date or amount due.